# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN J. FLYNN, JAMES BOLAND, GERALD O'MALLEY KEN LAMBERT, GERARD SCARANO, H.J. BRAMLETT EUGENE GEORGE, PAUL SONGER, CHARLES VELARDO, MATTHEW AQUILINE, GREGORY R. HESS, MICHAEL SCHMERBECK, VINCENT DELAZZERO, and BEN CAPP, JR, as Trustees of, and on behalf of the BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, 620 F Street, NW, Suite 700 Washington, DC  20004-1604 (202) 783-3788, <br><br> Plaintiffs, <br><br> v. <br><br> CONTINENTAL MASONRY CORPORATION, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 06 CV-0841 Judge: Gladys Kessler |

**DECLARATION OF DAVID F. STUPAR IN SUPPORT
OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, DAVID F. STUPAR, hereby declare as follows:

1.    I am the Executive Director of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund").  I have personal knowledge of the facts stated herein and, if called to testify as a witness, I could and would competently testify as set forth below.

2.    The IPF is a multiemployer employee benefit plan subject to ERISA, as amended by the Multiemployer Pension Plan Amendment Act ("MPPAA").  The IPF is governed by an equal number of employer-appointed and union-appointed Trustees, pursuant to the Taft-Hartley Act.  Benefits under the plan are funded by contributions from participating employers.  The Fund is administered in the District of Columbia.

3.    The Fund provides pension and other benefits to employees who work in the construction industry under contracts negotiated between Bricklayer local unions and employers.  Pursuant to these contracts, the employers are obligated to make contributions to the Fund in order to fund the benefits provided to the participants and beneficiaries.  The MPPAA protects the stability of the Fund by requiring that any employer who withdraws from the Fund make *pro rata* payments necessary to ensure continued benefits for participants and beneficiaries.

4.    The Trustees of the Fund adopted Withdrawal Liability Procedures ("EWL Procedures") (*see* Attachment 1) to govern the withdrawal of employers from the Fund.

5.    Under MPPAA and the EWL Procedures, a participating employer is deemed to have withdrawn from the Fund when the Fund determines that the employer ceases to have an obligation to contribute to the Fund and has continued to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required.

6.    I am personally familiar with the account of Continental Masonry Corporation ("Continental Masonry" or "Defendant").

7.    Continental Masonry, acting through its authorized agent or officer, executed a collective bargaining agreement ("Agreement") with an affiliate of the Bricklayers & Trowel Trades International Union.

8.    Continental Masonry has maintained offices in Oklahoma and conducted business in Oklahoma.  Continental Masonry had employed members of the Bricklayers & Trowel Trades International Union and its affiliated local unions and had participated in and made contributions to the Fund during the years 1998 through 2002.

2

9.   Continental Masonry is therefore an "employer" within the meaning of the MPPAA.

10.   The Fund determined that Continental Masonry withdrew from the Fund in May 2003, as it ceased making contributions to the Fund and continued to perform the same type of work it formerly carried out under the collective bargaining agreement in the same geographic area. *See* 29 U.S.C. 1383(b)(2).  The Fund provided this information to the Fund's actuary, the Segal Company, and instructed the Segal Company to determine the Withdrawal Liability owed by Defendant. *See* 29 U.S.C. § 1382.  The Segal Company produced an Actuarial Report (*see* Attachment 2) relating to the Withdrawal Liability owed by Continental Masonry and the payment schedule for such Withdrawal Liability, pursuant to 29 U.S.C. § 1399(b) and the EWL Procedures.

11.   Consistent with 29 U.S.C. §§ 1382 and 1399(b)(1) and the EWL Procedures, the Fund sent a Notice of Withdrawal Liability ("EWL Notice") to Continental Masonry on November 30, 2005.  The EWL Notice notified the employer of the amount of liability owed and the schedule for liability payments, and demanded payment. *See* 29 U.S.C. § 1399(b)(1).  Continental Masonry failed to make its first interim payment according to schedule.

12.   On February 6, 2006, consistent with the EWL Procedures, Counsel for the Fund sent written notification ("Default Notification") to Continental Masonry regarding its missed first interim payment, giving Continental Masonry an additional 60 days to make the payment plus interest from the payment due date.  Continental Masonry neglected to cure its failure to pay within 60 days of receiving counsel's Default Notification.

2156403.01

13. On April 10, 2006, Counsel for the Fund sent Defendant a second notice regarding its default, granting Defendant two additional weeks in which to comply with its payment schedule. Defendant failed to make payment within this time frame.

14. On May 9, 2006, Counsel for the Fund sent written notification to Defendant that the EWL assessment against Continental Masonry had been revised to include contributions arising from a prior plan, the Bricklayers International Union No. 5 of Oklahoma Pension Fund, that merged into the IPF on December 1998. Counsel further advised Defendant that, pursuant to the IPF's monthly payment schedule for this revised assessment, Continental Masonry was required to pay the IPF $4,043.41 for 45 months with a final payment of $2,577.09.

15. As of the date of this Declaration, despite due demand, Defendant has failed to make a single withdrawal liability payment according to the Fund's payment schedule or cure their failure to make such payments in the 60-day time frame provided.

16. Because Continental Masonry failed to make payments in the requisite 60 days after receiving a Default Notification, counsel for the Fund, in accordance with the MPPAA and EWL Procedures, filed suit against Defendant to recover the full Withdrawal Liability due and owing upon default. Pursuant to 29 U.S.C. § 1451, Plaintiffs are entitled to treat Defendant's default as a delinquency, such that the Fund's Collection Procedures ("Collection Procedures")(*see* Attachment 3) govern in conjunction with the EWL Procedures. In addition to the full Withdrawal Liability owed, Plaintiffs are also entitled to interest assessed on the unpaid Withdrawal Liability from the due date for payment, liquidated damages assessed on the Withdrawal Liability, and the amount incurred by the Fund for attorney's fees and costs. *See* 29 U.S.C. § 1451(b); *see also* Collection Procedures (Attachment 3).

2156403.01

17.  Defendant thus owes the Fund $166,022.00 for the full amount of unpaid Withdrawal Liability due and owing upon a default under 29 U.S.C. § 1399(c)(5).

18.  As provided for under 29 U.S.C. §§ 1451(b) and 1132(g)(2)(D), Defendant owes $33,204.40 for the liquidated damages at the rate of 20 percent, assessed on the Withdrawal Liability.

19.  The court fee of $350.00 for the cost of filing this action is recoverable under 29 U.S.C. §§ 1451(b) and 1132(g)(2)(D).

20.  Attorney's fees of $4,272.00 incurred by Plaintiffs for this action are recoverable under 29 U.S.C. §§ 1451(b) and 1132(g)(2)(D).  A detailed accounting of the attorney's fees incurred in this action is presented in the Declaration of counsel to the Fund which accompanies this Motion For Default Judgment.

21.  The total amount owed the Fund as outlined above is $203,848.40.

I declare under penalty of perjury that the foregoing is true and correct.

Date: January ___18___, 2007

David F. Stupar
Executive Director

2156403.01

**EXHIBIT 1**

## WITHDRAWAL LIABILITY PROCEDURES OF THE
## BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND

I.      General Provisions

1.    The Withdrawal Liability Procedures of the Bricklay-ers & Trowel Trades International Pension Fund ("IPF") shall be read in conjunction with the Collection Procedures of the IPF.

2.    The Withdrawal Liability Procedures of the IPF are supplemented by Parts 2641 and 2644 of Title 29 of the Code of Federal Regulations.

II.     Notice, Review And Payment Of Withdrawal Liability

1.    Notice.

(a)    If an employer completely or partially withdraws from the IPF within the meaning of sections 4203(b)(2) or 4208(d)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), the IPF office will send a Notice of Withdrawal Liability to the employer demanding payment.  The date of this Notice is the "Demand Date."  (Sample attached as A).

(b)    The Notice of Withdrawal Liability will advise the employer of the amount of liability owed, the schedule for liability payments, and the due date of the first liability payment (no later than 60 days after the Demand Date).

2.   Review.    Within 90 days from the Demand Date, the employer may request the IPF to review the amount of liability owing.  The IPF Office will respond to an employer's request for review, notifying the employer of the IPF's decision and the basis

for the decision ("Reevaluated Determination").  If the employer
wishes to contest the Reevaluated Determination, the employer may
do so by requesting arbitration in the manner set forth in
Part III below.

3.  _Failure to Pay_.  Payment according to the IPF's
schedule is required notwithstanding any request for review or
arbitration.  If an employer fails to make any liability payment
when due (as provided in the schedule for liability payments),
then the IPF Office will send written notification to the
employer, requiring the employer to pay the unpaid amounts, plus
interest from their due dates, within 60 days.  Pursuant to the
IPF's authority under 29 C.F.R. § 2644.4 to adopt rules concerning
overdue and defaulted withdrawal liability, the Collection
Procedures of the IPF, including the interest rates on unpaid
amounts prescribed therein, shall apply to failure to make the
required payments within 60 days of such notice and shall apply to
failure to pay accelerated withdrawal liability under paragraph 4
below.

4.  _Default and Acceleration_
(a)  If the employer defaults, as defined below, on
its obligation to make withdrawal liability payments according to
the schedule set forth by the IPF, then the IPF will have the
right to require immediate payment of all or a portion of the out-
standing amount of the employer's withdrawal liability, plus ac-
crued interest thereon from the due date of the first payment
which was not timely made.  In the event that the IPF accelerates

- 2 -

only a portion of the outstanding amount of the employer's withdrawal liability, the IPF shall establish a new schedule of payments for the remaining amount of the employer's withdrawal liability.

    (b)  Default occurs the 61st day after the last of:

        (1)    the date the employer receives written notification from the IPF of failure to pay under paragraph 3 above;

        (2)    the expiration of 90 days after the Demand Date under paragraph 2 above;

        (3)    the expiration of the time for initiating arbitration under Paragraph III.2 below; or

        (4)    if arbitration is timely initiated by the IPF, the employer or both, issuance of the arbitrator's decision.

## III.    Arbitration

1.    Disputes that are left unresolved by the process delineated in paragraph II.2 above shall be resolved through arbitration.

2.    Either the IPF or the employer may initiate an arbitration proceeding within a 60-day period after the earlier of (a) the date when the IPF provides the employer with the Reevalu-

- 3 -

ated Determination or (b) 120 days after the employer requests the Reevaluated Determination.  In the alternative, the employer and the IPF jointly may initiate arbitration within the 180-day period after the Demand Date.

3.   "Initiation" means providing the other party with a written notice of initiation of arbitration ("Notice") within the time limitations set forth above.  If the employer initiates arbitration, the Notice must include a statement that the employer disputes the IPF's determination and is initiating arbitration. The employer shall attach to the Notice a copy of the Demand, any request for reconsideration and any response thereto.

4.   Within 46 days after arbitration is initiated, or within such other period as is determined by agreement, the employer and the IPF mutually will agree to the selection of an arbitrator and will mail to the designated arbitrator a notice of appointment.  The notice of appointment shall include the place for a hearing.  In accordance with the policy reflected in Section 4301(d) of ERISA, 29 U.S.C. § 1451(d), all hearings for arbitration shall take place in the District where the Fund is administered.

5.  If the parties fail to agree to the selection of an arbitrator, the Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes of the American Arbitration Association ("AAA") shall apply to the selection of an arbitrator. Therefore, if no agreement has been reached within 45 days, the parties will file at the Regional Office of the AAA two copies of

- 4 -

a signed written agreement to arbitrate which briefly describes the dispute and states that the parties agree to arbitrate where the Fund is administered.  The parties also will submit the appropriate administrative fee.  Thereafter, the AAA will submit to each party a list of at least five potential arbitrators with a brief biographical profile and fee structure of each.  Within seven days, each party may object to specific candidates and list the remaining in order of preference.  In response, the AAA shall invite the acceptance of an arbitrator to serve.  If appointment cannot be made from the submitted lists, the AAA will make the appointment without the submission of additional lists.

6.    Notwithstanding the employer's timely initiation of arbitration, the employer must meet the payment schedule set forth by the IPF unless and until the arbitrator issues a final decision with respect to the determination(s) submitted for arbitration which alters the payment schedule.

IV.    Court Action

1.    Counsel will file suit promptly to recover unpaid withdrawal liability payments and/or the accelerated amount of withdrawal liability if an employer fails to make payments in accordance with the IPF's payment schedule (as set forth in the Notice of Withdrawal Liability or any subsequent modification thereof by an arbitrator or court) and does not cure this failure within 60 days after the employer receives written notification from the IPF office.

- 5 -

2.    The Collection Procedures and Guidelines of the IPF shall apply to all court actions filed by counsel to recover withdrawal liability payments.

EXHIBIT 2

 SEGAL

**THE SEGAL COMPANY**
One Park Avenue  New York, NY 10016-5895
T 212.251.5000  F 212.251.5490  www.segalco.com

# MEMORANDUM

**FROM:**   Alan P. Cohn                    **DATE:**   May 1, 2006
                     Darrin Owens

**TO:**       David Stupar, Executive Director
                     Bricklayers and Trowel Trades International Pension Fund

**RE:**       **Withdrawal Liability for Continental Masonry Corp. – REVISED**

As requested, we have revised the withdrawal liability calculation for Continental Masonry Corp.  Our calculations are based on information received from the Fund Office with respect to Continental Masonry Corp.'s contribution history (1998 – 2002), hours and contribution rate history (1993 – 2003) and a withdrawal date of May 2003.  Included in the contributions history is Continental Masonry Corp.'s estimated 1998 contributions of $20,735.25 to Bricklayers International Union No. 5 of Oklahoma Pension Fund, which merged into the IPF on December 1, 1998.

Please note that it is also our understanding that this employer is not part of a larger controlled group.  We have attached the withdrawal liability calculation and the payment schedule for this liability.

All calculations were done under the supervision of Diane Gleave, ASA, MAAA, EA.

Please let us know if you have any questions.

Best regards.

cc:   Ira Mitzner, Esq.

742348/02073.009

**Benefits, Compensation and HR Consulting**  ATLANTA  BOSTON  CHICAGO  CLEVELAND  DENVER  HARTFORD  HOUSTON  LOS ANGELES  MINNEAPOLIS  NEW ORLEANS  NEW YORK  PHILADELPHIA  PHOENIX  SAN FRANCISCO  TORONTO  WASHINGTON, DC

 Multinational Group of Actuaries and Consultants   BARCELONA  BRUSSELS  DUBLIN  GENEVA  HAMBURG  JOHANNESBURG  LONDON  MELBOURNE  MEXICO CITY  OSLO  PARIS

I.    **Withdrawal Liability Allocation to Continental Masonry Corp.**

Based on a withdrawal date of May 2003

| | | |
|---|---|---:|
| 1. | December 31, 2002 initial plan year unfunded present value of vested benefits | $497,951,754 |
| 2. | Total contributions of withdrawing employer January 1, 1998 to December 31, 2002 | 109,085* |
| 3. | Total contributions of all employers January 1, 1998 to December 31, 2002 | 327,180,678 |
| 4. | Allocable share of liability: [(1) x (2) ÷ (3)] | 166,022 |
| 5. | Excused due to De Minimis Rule** | 0 |
| 6. | Net withdrawal liability: (4) - (5) | 166,022 |

---

*    Included in the contributions history is Continental Masonry Corp.'s estimated 1998 contributions of $20,735.25 to Bricklayers International Union No. 5 of Oklahoma Pension Fund, which merged into the IPF on December 1, 1998.

**   The de minimis deductible is equal to $50,000 reduced $1 for each $1 that the allocable share of liability exceeds $100,000. If the allocable share of liability exceeds $150,000, the de minimis deductible is $0.

Continental Masonry Corp.
Page 3 of 5

## II. Determining Payment Amount and Length of Payment Period for Continental Masonry Corp.

(a)  Withdrawal liability                                                            $166,022

Hours of contributions for fiscal years ended December 31:

| | | | |
|---|---|---|---|
| 1993 | 0 | 1998 | 28,388 |
| 1994 | 1,294 | 1999 | 22,193 |
| 1995 | 0 | 2000 | 16,018 |
| 1996 | 32,234 | 2001 | 8,150 |
| 1997 | 35,837 | 2002 | 8,966 |

(b)  Highest consecutive three-year average hours in the last 10 years prior to the year of withdrawal                          32,153

(c)  Highest contribution rate in 10 years ending with year of withdrawal                                                     $1.50

(d)  Required annual payment: (b) x (c)                            48,230

(e)  Amortization ratio: (a) / (d)                                 3.442297

(f)  Largest value in Factor Table Column I which is less than (e)                                                     2.795565

(g)  Number of years for value (f)                                 3

(h)  Amount amortized in (g) years: (d) x (f)                      $134,830.11

(i)  Amount left to amortize: (a) - (h)                            $31,191.89

(j)  Amount to amortize in the final year: (i) x Table Column II value for (g) years                                   $38,749.59

(k)  Quarterly payment: (d) ÷ 4                                    $12,057.50

(l)  Adjusted monthly payment: (k)/2.98201                         $4,043.41

(m)  Full quarters to pay in final year: (j) ÷ (k)                 3

(n)  Amount to pay in final quarter: (j) - [(k) x (m)]             $2,577.09

Continental Masonry Corp.
Page 4 of 5

| | | | |
|---|---|---|---|
| (o) | Full monthly payments in final quarter:  (n)/(l) | | 0 |
| (p) | Number of full monthly payments: [12 x (g)] + [3 x (m)] + (o) | | 45 |
| (q) | Final payment | $2,577.09 | |

Employer pays:

$4,043.41 per month for 45 months plus a final payment of $2,577.09.

Continental Masonry Corp.
Page 5 of 5

## FACTOR TABLE

| Number of years | COLUMN I<br><br>Present value<br>of $1 per year<br><br>For withdrawals<br>during 2003 | COLUMN II<br><br>Accumulation<br>of $1<br><br>For withdrawals<br>during 2003 |
|---|---|---|
| 0 | 0.000000 | 1.000000 |
| 1 | 1.000000 | 1.075000 |
| 2 | 1.930233 | 1.155625 |
| 3 | 2.795565 | 1.242297 |
| 4 | 3.600526 | 1.335469 |
| 5 | 4.349326 | 1.435629 |
| 6 | 5.045885 | 1.543302 |
| 7 | 5.693846 | 1.659049 |
| 8 | 6.296601 | 1.783478 |
| 9 | 6.857304 | 1.917239 |
| 10 | 7.378887 | 2.061032 |
| 11 | 7.864081 | 2.215609 |
| 12 | 8.315424 | 2.381780 |
| 13 | 8.735278 | 2.560413 |
| 14 | 9.125840 | 2.752444 |
| 15 | 9.489154 | 2.958877 |
| 16 | 9.827120 | 3.180793 |
| 17 | 10.141507 | 3.419353 |
| 18 | 10.433960 | 3.675804 |
| 19 | 10.706009 | 3.951489 |
| 20 | 10.959078 | 4.247851 |
| Interest rate | 7.5% | 7.5% |

**EXHIBIT 3**

## GENERAL COLLECTION PROCEDURES OF
## THE CENTRAL COLLECTION UNIT OF
## <u>THE BRICKLAYERS AND ALLIED CRAFTWORKERS</u>

These General Collection Procedures govern the collection of delinquencies by the Central Collection Unit of the Bricklayers and Allied Craftworkers ("CCU") on behalf of the following participating entities: Bricklayers and Allied Craftworkers International Union ("BAC"); Bricklayers and Trowel Trades International Pension Fund ("IPF"); Bricklayers and Allied Craftworkers International Health Fund ("IHF"); International Masonry Institute ("IMI"); Bricklayers and Allied Craftworkers Political Action Committee ("BACPAC"); and Local Officers and Employees Pension Fund ("LOEPF") (collectively "CCU Entities"). IHF and BAC SAVE are covered by Special Collection Procedures. Such Special Collection Procedures shall control when in conflict with these General Procedures.

I.      REPORTS AND PAYMENTS TO CCU ENTITIES

     A.      Due Date

          1.      Contributions and reports to the CCU Entities are due on or before the 15th day of the month following the month for which the contributions are being paid ("Due Date"), unless the collective bargaining agreement imposes a different Due Date.

          2.      Reports of participating employers must be filed each month even if no contributions are due for that month. All participating employers, whether submitting contributions directly or through a local administrator or local union, must use the standard CCU report form.

          3.      Employer reports will be date-stamped on the day received in the CCU Office, or in the case of local administrators or local unions, on the day received by the local. The stamped date will be the controlling date with regard to these Collection Procedures.

          4.      If any controlling date under these Collection Procedures falls on a weekend or legal holiday, the applicable date will be the next working day.

5. The IPF is authorized by other CCU Entities to act on their behalf in litigation. All references to "CCU Office" in these Collection Procedures may also refer to "IPF Office," as applicable.

B. Notice Of Delinquency

1. If the CCU Office has not received payment by the last day of the month of the Due Date, the CCU Office will send a Reminder Notice to the employer. If payment has not been received 30 days after the Reminder Notice, a Notice of Delinquency will be sent to the employer.

2. The Notice of Delinquency will advise the employer that required contributions were not received by the Due Date and warn that if the contributions are not received within 15 days (60 days following the Due Date), the employer will be considered delinquent ("Delinquent Date") and will be assessed interest at 15% per annum (retroactive to the Due Date) and may be required to pay Liquidated Damages of 20% of the delinquent amount. The Notice of Delinquency will require the employer to notify the CCU Office within five (5) days of the date of notice if the employer believes that the Notice of Delinquency was sent in error.

C. Notice Of Referral To Counsel

1. If the CCU Office has not received payment within 15 days of the Notice of Delinquency, the CCU Office will send to the employer a Notice of Referral to Counsel.

2. The Notice of Referral to Counsel will advise the employer that payments were not received by the Delinquent Date and that payments for contributions and interest are due and owing. Unless all sums owed are received by the CCU Office within 10 days following the Notice of Referral to Counsel, liquidated damages up to 20% of the delinquent contributions or statutory interest may be imposed and the matter automatically will be referred to counsel. The Notice of Referral to Counsel also will state that counsel will be instructed to seek all sums recoverable, including contributions, interest, liquidated damages or statutory interest, and all attorneys' fees.

II.    COUNSEL

    A.    Procedures

        1.    If CCU has not received the contributions and applicable interest within 10 days of the Notice of Referral to Counsel, the matter automatically will be referred to counsel no later than 15 days from the due date.

        2.    Within 10 days of referral, counsel will send a letter to the employer advising that if payment of contributions, interest and other damages is not received within 10 days, suit will be instituted.

        3.    Suit thereafter will be instituted.

    B.    CCU Policy Following Referral To Counsel

        1.    Following the referral of a matter to counsel, the CCU Office will have no authority to deal with an employer except to discuss computations.

        2.    Counsel shall file suit for all moneys recoverable, including damages that may be recoverable under Section 502(g)(2) of ERISA and also may seek remedies under applicable state law against individual corporate officers and/or shareholders.

        3.    The CCU is authorized to seek legal redress prior to the time that the above procedures are exhausted if, in his sole discretion, the Director concludes that the interests of affected participants require immediate action. If an employer fails to make payment when due, suit may be filed to collect all delinquent contributions, interest and other damages regardless of other exhaustion requirements in these Collection Procedures.

III.    AUDITS

Audits will be conducted to insure full compliance with employer obligations under collective bargaining agreements. Every employer can expect to be audited at some time. If a delinquency is discovered as the result of an audit, the employer will be assessed the cost of the audit.

A.    Detection Of Delinquent Employers Subject To Audit

    1.    At least once every year, the Executive Directors of the IPF and IHF will send information to participants reflecting contributions received from participating employers.  The participants will be encouraged to report missing hours to the CCU.

    2.    The CCU will take steps to insure that delinquencies of participating employers are recovered.

B.    Audits Performed By Third Parties

    1.    The CCU will rely upon audits performed by third parties when CCU determines that they conform to auditing procedures contained in the CCU's Guidelines.

    2.    The CCU periodically will monitor the audits of third parties in order to confirm their reliability.

C.    Audits Performed On Employers Contributing Directly To The CCU

    1.    The CCU will coordinate with third parties who perform audits on employers contributing directly to CCU and will insure that such audits conform to CCU guidelines.

    2.    As to employers contributing directly to the CCU who are not subject to audits by third parties, CCU will perform two types of payroll audits on directly contributing employers in order to insure compliance.

        a.    <u>Random Audits</u> -- Audits may be conducted on any participating employer at any time, on a random basis, at the direction of the Director.

        b.    <u>Problem Audits</u> -- When the Director receives information from a local union, covered member or other source indicating that an employer may be delinquent, the Director may order that an audit be conducted.

D.    Notification Of Audit Delinquency

    1.    The CCU Office will send a Notice of Delinquency to audited employers found to be delinquent stating the amount of additional contributions owing as a result of the audit.

    2.    Any unsatisfied audit deficiency will be treated according to the CCU's Collection Procedures following the intervention of counsel.

4

    E.    Form of Audits

        1.    All audits will be carried out under procedures formulated by the Director.

        2.    All employer books and records set forth in the audit procedures will be made available to the CCU auditor.

IV.    BONDS

The Director may, in his sole discretion, require an employer to post a cash or surety bond in an amount and under terms necessary to protect the interests of the applicable CCU Entity.

5